IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARY WEEKLY, | ) |
| | ) CASE NO. 1:13-CV-2108 |
| Plaintiff, | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| | ) KENNETH S. McHARGH |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) **MEMORANDUM OPINION &** |
| | ) **ORDER** |
| Defendant. | ) |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 17). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Cary Weekly's ("Plaintiff" or "Weekly") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*, is supported by substantial evidence and therefore conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

### I. PROCEDURAL HISTORY

Weekly filed an application for Supplemental Security Income benefits on January 6, 2011. (Tr. 178-82). Plaintiff alleged he became disabled beginning on November 3, 2010, due to suffering from an "immobilized left arm." (Tr. 178, 206). In May 2011, Weekly's claim was denied at the initial level of administrative review. (Tr. 105-07). On August 9, 2011, Plaintiff indicated an additional impairment of anxiety. (Tr. 250-56). In October 2011, the Social Security Administration denied Plaintiff's request for reconsideration. (Tr. 115-21).

At Plaintiff's request, administrative law judge ("ALJ") Penny Loucas convened an administrative hearing on June 12, 2012, to evaluate his application. (Tr. 34-75). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Mark Anderson, also appeared and testified. (*Id.*).

On July 12, 2012, the ALJ issued an unfavorable decision, finding Weekly was not disabled. (Tr. 19-28). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 15). The Appeals Council denied the request for review, making the ALJ's July

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

12, 2012, determination the final decision of the Commissioner. (Tr. 1-5). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II. EVIDENCE

### A. Personal Background Information

Weekly was born on September 14, 1960, and was 51-years-old on the date the ALJ rendered her decision. (Tr. 178). As a result, Plaintiff was considered a "person closely approaching advanced age" for Social Security purposes. 20 C.F.R. § 416.963(d). Weekly attended school through the eleventh grade and later obtained his GED. (Tr. 67). He has past relevant work as an embroidery machine operator, a flatbed press operator, a car porter, a silk screener, and a decal applier. (Tr. 68-70).

### B. Medical Evidence[2]

On November 4, 2010, Weekly was the victim of an assault, having been hit on his left shoulder and face with a baseball bat by the son of the man with whom he lived. (Tr. 445-510). He suffered a severe fracture of the head, neck, and proximal shaft of the left humerus. (Tr. 508). After treatment for alcohol detoxification and pain control, Weekly underwent surgery in the form of a left shoulder arthroplasty on November 10, 2010. (Tr. 455-62). After receiving treatment at Huron Hospital, Plaintiff began living at Joseph's Home on the St. Vincent Charity Medical Center campus. (Tr. 325). Weekly started physical therapy for his shoulder at St. Vincent on December 22, 2010. Plaintiff was discharged from physical therapy in June 2011, with instructions to obtain from his physician an opinion regarding whether to continue physical therapy. (Tr. 540). He had attended 34 sessions and missed 7. (*Id.*).

---

[2] Because Plaintiff bases his appeal of the ALJ's decision on his mental impairments, the Court will focus primarily on medical evidence related to Plaintiff's mental health.

As part of living at St. Joseph's Home, Plaintiff was required to attend weekly sessions with a professional clinical counselor, Joseph Cummins. On December 20, 2010, Cummins observed Plaintiff's mood as euthymic, thought processes somewhat tangential, and insight as fair. (Tr. 366). Weekly described symptoms that were indicative of post-traumatic stress disorder ("PTSD"). (*Id.*). Cummins saw Plaintiff once a week for counseling through April 2011. (Tr. 366-79).

On April 6, 2011, Cummins completed a mental status questionnaire. (Tr. 359-64). Cummins indicated that he had treated Plaintiff since November 16, 2010. (Tr. 359). Plaintiff had completed treatment for alcohol abuse, seemed to have been sober for six months, and was engaging in a 12-step program. (*Id.*). Weekly appeared mild to moderately depressed and easily agitated, but his affect and speech were appropriate. (*Id.*). Cummins opined that Weekly's abilities in the following areas were within normal limits: to remember, understand, and follow directions; to maintain attention; to sustain concentration, persist at tasks, and complete them in a timely fashion; and to react to pressure in a work setting involving simple, routine, or repetitive tasks. (Tr. 361). Additionally, Cummins found no significant deficiency in Plaintiff's ability to adapt and interact socially. (*Id.*). Cummins also completed a daily activity questionnaire, indicating that Plaintiff independently prepared his food, completed household chores, performed personal hygiene, shopped, drove or took public transportation, and did banking or paid bills. (Tr. 363-64).

On May 9, 2011, Weekly underwent a consultative psychological evaluation with Michael Faust, Ph.D. (Tr. 381-86). Dr. Faust observed that Weekly took a bus to the office and was punctual for his appointment. (Tr. 381). Weekly stated that he was left-handed, and the pain and limitations arising from his shoulder injury caused depression. (Tr. 382). Plaintiff reported

4

that he was not taking psychotropic medication, but that he experienced depression and irritability. (Tr. 382-83). Weekly also expressed feeling anxious around others due to fear that he would be assaulted again. (*Id.*).

Dr. Faust performed a mental status examination. The doctor found that Weekly was well-groomed, polite, and cooperative. (Tr. 383). Weekly did not exhibit any significant speech problems and was articulate. (Tr. 383-84). Dr. Faust commented that Plaintiff's attention and concentration throughout the interview were variable in that Plaintiff struggled to stay focused and lost his train of thought while performing mental status tasks. (Tr. 384). The doctor opined that Weekly presented as sad, anxious, and depressed, displaying a constricted range of emotions and a blunted affect. Weekly complained of poor energy and motivation, worry, frustration, and flashbacks and nightmares of assault. However, he showed no signs of suicidal or homicidal ideation. In terms of sensorium and cognitive functioning, the doctor found Plaintiff was conscious and alert throughout the exam, had no trouble recalling details of his history, and his thinking was reality-based. Weekly demonstrated good insight and judgment. (*Id.*).

Dr. Faust diagnosed major depressive disorder (recurrent and moderate), as well as PTSD. (Tr. 385). The doctor assigned a Global Assessment of Function ("GAF") score of 50, representing significant symptoms. (*Id.*). Dr. Faust went on to provide the following discussion of four work-related mental abilities:

- **Understanding, remembering, and carrying out instructions** – Weekly had no difficulty understanding questions or instructions, including complex or multi-step instructions, and Weekly possessed adequate memory for his history. Dr. Faust estimated Plaintiff was functioning within the average range of intellectual ability; however, the doctor felt Plaintiff's ability to remember instructions may be negatively affected by his lapses in attention. The psychologist opined that Weekly would likely have difficulty recalling what needed to be done in the workplace to follow through with completing tasks. Dr. Faust opined that Weekly's lack of attention was a function of anxiety and depression. Plaintiff reported no difficulty learning job duties during his previous employment.

5

- **Maintaining concentration, persistence, and pace to perform simple and multi-step tasks** – Dr. Faust described Weekly's level of attention and concentration throughout the interview as variable. Plaintiff was able to slowly perform "serial 7s"—counting backwards from 100 in intervals of 7—but after a few numbers, lost his train of thought. Weekly completed five digits forward and three backwards, which showed limited attention and concentration. Weekly reported difficulty staying on task because of distractibility and a lack of persistence due to low motivation, poor energy, and a depressed mood.

- **Responding appropriately to supervision and coworkers** – Plaintiff was cooperative during the examination, but difficult to engage and relate to, due to anxiety and depression. Dr. Faust opined that Plaintiff had limitations in his ability to respond to others in the workplace because of his depression and PTSD.

- **Responding appropriately to work pressures** - Weekly was in counseling, but not being treated with psychiatric medications. Plaintiff described his stressors as recovering from the assault, physical pain, his mother's health, and financial stress. Dr. Faust opined that work pressures may increase Plaintiff's PTSD, depression, and anxiety symptoms. The doctor felt that Plaintiff did not have effective coping skills to manage emotional outbursts.

(Tr. 385-87).

On August 5, 2011, Cummins completed a medical source statement describing Plaintiff's mental capacity. (Tr. 511-12). Cummins opined that Weekly had a "good ability" to follow work rules; use judgment; respond appropriately to changes in routine settings; maintain regular attendance and be punctual; understand, remember, and carry out simple job instructions; maintain appearance; socialize; relate predictably in social situations, and leave home on his own. A "good ability" was defined as satisfactory functioning. Cummins felt Plaintiff had a "fair ability" to maintain attention and concentration for extended periods of two hour segments; deal with the public; relate to co-workers; interact with supervisors; deal with work stress; complete a normal workday and week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember, and carry out complex or detailed job instructions; behave in an

emotionally stable manner; and manage funds or schedules. A "fair ability" was defined as an ability to function that is moderately limited but not precluded. Finally, Cummins indicated that Weekly had a "poor ability" to function independently without special supervision, and to work in coordination with or proximity to others without being unduly distracted or distracting. A "poor ability" means that functioning is significantly limited. (*Id.*).

On October 6, 2011, state agency psychologist John Waddell, Ph.D., reviewed the record and completed a mental residual functional capacity assessment. (Tr. 96-98, 100-01). In regard to concentration and persistence, Dr. Waddell opined that Weekly would be able to understand, remember, and carry out simple and moderately complex tasks. (Tr. 100). As to social interaction, the doctor concluded Plaintiff could "relate adequately to coworkers, supervisors, and the general public, but would do best in a position where interactions with the public are infrequent due to his [depression and anxiety]." (Tr. 101). As to adaptation, Dr. Waddell found that Plaintiff "can adapt to settings without frequent changes. Depression and anxiety would affect coping responses in the workplace." (*Id.*).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 30, 2010, the application date.

2. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, status post fracture of the left humerus with status post total left shoulder arthroplasty, major depressive disorder, and post-traumatic stress disorder (PTSD).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with up to occasional push/pull with the left dominant upper extremity, unlimited climbing of ramps and stairs, unlimited balancing, stooping, kneeling and crouching, occasional crawling, never climbing

7

    ladders, ropes or scaffolds, the left dominant arm is limited to up to occasional lateral front and overhead lifting, no other limits on use of hands, must avoid unprotected heights, can understand, remember and carry out work consistent with performing work at SVP levels 1, 2, 3, 4, and 5, can maintain concentration, persistence and pace over a normal work day and work week, no limits with interacting with others, and can adjust to changes in a workplace setting.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on September 14, 1960 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

7. The claimant has his GED which is equivalent to a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 30, 2010, the date the application was filed.

(Tr. 21-27) (internal citations omitted).

## IV. DISABILITY STANDARD

    A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Weekly alleges that the ALJ failed to properly evaluate the limitations resulting from his depression and PTSD. More specifically, Plaintiff argues that his limitations in concentration, persistence, and pace were not accommodated by the RFC. Additionally, Weekly maintains that

9

the ALJ failed to adequately assess the opinion issued by consultative psychological examiner, Dr. Faust.  The Court will address each assignment of error in turn.

### A. Plaintiff's limitations in concentration, persistence, and pace

Plaintiff alleges that the RFC does not properly account for his limitations in concentration, persistence, and pace.  At step two of the sequential evaluation, the ALJ identified depression and PTSD as severe impairments. (Tr. 21).  At step three of the sequential evaluation, the ALJ found that Weekly had moderate difficulties with regard to concentration, persistence, or pace. (Tr. 22).  The ALJ based the assignment of moderate limitations on Dr. Faust's opinion that Weekly's attention and concentration during the consultative examination were variable, Weekly struggled to stay focused at times, and Weekly completed five digits forward and three backward, indicating an impairment in sustained concentration. (Tr. 22-23).

In the RFC, the ALJ found that Weekly could "understand, remember, and carry out work consistent with performing work at SVP levels 1, 2, 3, 4, and 5." (Tr. 23).  Additionally, Plaintiff was able to maintain concentration, persistence, and pace over a normal workday and workweek, with no limitations in interacting with others and the ability to adjust to changes in a workplace setting. (*Id.*).

Weekly correctly asserts that the RFC does not account for his moderate limitations in concentration, persistence, or pace.  In the RFC, the ALJ expressly found that Plaintiff could maintain concentration, persistence, and pace, without any apparent limitation.  Additionally, the "specific vocational preparation," or "SVP," levels assigned do not accommodate a moderate limitation.  SVP 1 and 2 correspond to unskilled work. S.S.R. 00-4p, 2000 WL 1898704, at *3.  However, the RFC allows for work up to SVP levels 3 and 4, which are considered semiskilled work, and SVP level 5, which is deemed skilled work. *Id.*

10

Generally, a limitation to unskilled work accommodates moderate functional limitations in concentration, persistence, and pace. *See Taylor v. Comm'r of Soc. Sec.*, No. 1:11-CV-46, 2012 WL 1029299, at *9 (W.D. Mich. Mar. 26, 2012). That is because unskilled work involves simple, routine, and repetitive tasks. The regulations define unskilled work as follows: "[W]ork which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 416.968(a). The Sixth Circuit has likewise found unskilled work to be defined as work involving simple, routine, and repetitive tasks. *Allison v. Apfel*, 229 F.3d 1150 (6th Cir. 2000) ("We believe that the ALJ's qualification that Allison was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that Allison is limited to unskilled light work.").

When a claimant is found to have moderate difficulties in concentration, persistence, or pace, further limitations beyond one to "simple, repetitive tasks" are not always necessary. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:10-CV-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct 18, 2011) (*discussing Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010)). Courts should take "a fact-based approach to determine whether, considering the record evidence, the plaintiff required specific limitations regarding his or her moderate difficulties with concentration, persistence, or pace." *Weagraff v. Comm'r of Soc. Sec.*, No. 1:11-CV- 2420, 2013 WL 968268 (N.D. Ohio Jan. 7, 2013) *report and recommendation adopted sub nom. Weagraff v. Colvin*, No. 1:11-CV-2420, 2013 WL 980435 (N.D. Ohio Mar. 7, 2013) (*citing Jackson*, 2011 WL 4943966, at *4)).

11

Thus, a restriction to unskilled work would arguably accommodate Weekly's moderate limitation in concentration, persistence, and pace.  Plaintiff does not appear to point to evidence that would establish more specific restrictions.  Weekly argues that his difficulties in sustaining concentration, lapses in sustained attention, and difficulty recalling what needs to be done to follow through with completing tasks are consistent with a limitation that he would be off task at least 15 percent of the day. But without more specific evidence from Dr. Faust, or another medical source, the Court cannot conclude that Plaintiff's problems with concentration, attention, and recall would result in him being off task as much as 15 percent of the day.

As the Commissioner notes, the VE's testimony demonstrates that adequate jobs would remain when a claimant with Plaintiff's exertional limitations is restricted to unskilled work. During the administrative hearing, the ALJ posed a hypothetical question limiting an individual to unskilled work (work at SVP levels 1 and 2), and maintaining concentration, persistence, and pace for two-hour long blocks of time. (Tr. 72).  In response, the VE indicated that the individual could perform the jobs of mail sorter, paint spray inspector, and laboratory sample carrier, which existed in significant numbers in the national economy. (*Id.*).

Nevertheless, the Court finds that remand is required to address Plaintiff's next allegation of error.  Because remand is otherwise necessary, and the current RFC does not account for Weekly's moderate limitations in concentration, persistence, and pace, the ALJ should remedy this flaw upon reconsideration, taking care to determine the appropriate RFC to accommodate Plaintiff's nonexertional limitations.

### B.  Dr. Faust

Weekly alleges that the ALJ failed to adequately assess Dr. Faust's opinion when formulating the RFC.  Plaintiff directs the Court to Dr. Faust's assessment of work-related

mental abilities, in which the doctor opined that: (1) Weekly's lapses in sustained attention may make it difficult to remember what he may be told, and (2) Weekly would likely have difficulty recalling what needs to be done to follow through with completing tasks. (Tr. 385-86).  These opinions related to Plaintiff's ability to understand, remember, and carry out instructions. (*Id.*). Dr. Faust made separate observations as to Plaintiff's ability to maintain attention, concentration, and persistence. (Tr. 386).  The Commissioner counters that substantial medical evidence contradicts Dr. Faust's opinion that Plaintiff had difficulties with memory and carrying out tasks.

In his decision, the ALJ attributed "some weight" to Dr. Faust's report. (Tr. 26).  The ALJ did so because the overall record showed that Weekly was not as limited in terms of "social functioning" as the doctor had concluded. (*Id.*).  The ALJ did not address Dr. Faust's observations related to Weekly's abilities to remember, recall, and carry out tasks.  In his determination of Plaintiff's RFC, the ALJ found that Plaintiff could perform work up to SVP level 5, without further non-exertional limitations. (Tr. 23).

It is well-established that for an ALJ's decision to stand, the ALJ is not required to discuss every piece of evidence in the record. *See, e.g.*, *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  Nevertheless, if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC. *See, e.g.*, *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p explains, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC

13

assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Here, the ALJ failed to discuss why the RFC did not include limitations with regard to the ability to remember and recall, although state agency consultant Dr. Faust indicated that Plaintiff was impaired in this regard. Because the ALJ's calculation of the RFC was less restrictive than Dr. Faust's assessment, the ALJ was required to explain his decision not to include further limitations in the RFC. During the administrative hearing, the ALJ posed a more restrictive hypothetical question to the VE, limiting a claimant to unskilled work while maintaining concentration, persistence, and pace for two-hour periods. (Tr. 72). Yet, even if these limitations were included in the RFC, it is unclear whether the limitations fully accommodate Dr. Faust's opinion with regard to Weekly's ability to remember.

The Commissioner argues that remand is not necessary because evidence in the record contradicts Dr. Faust's finding that Plaintiff's ability to remember was impaired. For instance, the Commissioner points to therapist Cummin's opinion from April 6, 2011, in which the therapist found that Plaintiff had no difficulties in long and short-term memory or concentration. (Tr. 359-60). The ALJ attributed "great weight" to this opinion. (Tr. 25). The Court agrees that there is evidence in the record that may contradict Dr. Faust's opinion. The ALJ, however, did not discuss his decision to omit limitations with regard to memory and the ability to carry out tasks, and relying on other information in the record to explain the omission would require the Court to engage in *post hoc* rationalization. It is improper for the Court to affirm the ALJ's decision based upon the *post hoc* rationalizations submitted by the Commissioner. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009); *Martinez v. Comm'r of Soc. Sec.*, 692 F. Supp.2d 822, 826 (N.D. Ohio 2010).

Furthermore, the ALJ specifically discussed Dr. Faust's recommendations with regard to Plaintiff's ability to function socially in the workplace. (Tr. 26).  This discussion by the ALJ leads the Court to question whether the ALJ considered Dr. Faust's recommendations with regard to memory and failed to discuss them, or failed to consider this portion of Dr. Faust's opinion at all.  Accordingly, Plaintiff is entitled to remand on this point so that the ALJ may properly address Dr. Faust's opinion.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date:  January 2, 2015.